## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 24-cv-00489**

GREGORY L. WARREN,

      Plaintiff,

v.

UNITEDHEALTH GROUP INCORPORATED, a Delaware corporation,

      Defendant.

---

## COMPLAINT

---

Plaintiff submits the following Complaint against Defendant.

## I.  PARTIES

1.     Plaintiff Gregory L. Warren ("Warren") is an individual who resides in Colorado.

2.     Defendant UnitedHealth Group Incorporated is a Delaware corporation with an address of 9900 Bren Road East, Minnetonka, Minnesota 55343. "UnitedHealth Group" is a registered trademark of UnitedHealth Group Incorporated, and UnitedHealth Group Incorporated does business as "UnitedHealth Group." "UHG" is a registered trademark of UnitedHealth Group Incorporated, and UnitedHealth Group Incorporated does business as "UHG." Defendant shall be referred to as "UHG" in this Complaint. UHG's registered agent in Colorado is The Corporation Company with an address of 7700 East Arapahoe

1

Road, Suite 220, Centennial, Colorado 80112. UHG has an office at 169 Inverness

Drive West, Englewood, Colorado 80112.

## II. JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§

1331, 1343, and 1367.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2)

because a substantial part of the events or omissions giving rise to Plaintiff's claims

occurred in this district.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      All prerequisites or conditions precedent to the institution of this suit

have been met.

6.      Plaintiff filed a timely charge of discrimination.

7.      On January 4, 2024, the EEOC issued a Notice of Right to Sue in

regard thereto. This action was timely filed within ninety days of Plaintiff's receipt

of the Notice of Right to Sue.

## IV.  GENERAL ALLEGATIONS

8.      Plaintiff seeks relief against Defendant on the ground that Defendant

has violated Title VII of the Civil Rights Act of 1964, 42 U.S. § 2000e *et seq*. ("Title

VII").

9.      Defendant is an employer within the meaning of Title VII. In its most

recent 10-K report to the Securities and Exchange Commission, UHG reported

having nearly 400,000 employees.

10.     For purposes of Title VII, UHG is a joint employer with its subsidiaries and business segments, including any subsidiary or business segment for which Plaintiff worked. UHG and its subsidiaries and business segments co-determine the essential terms and conditions of their employees' employment. "UnitedHealth Group" is a registered trademark of Defendant. "UnitedHealth Group" fired Plaintiff. UnitedHealth Group set the terms and conditions of Plaintiff's employment, including the mandatory COVID-19 vaccination policy referred to below. At all relevant times, UnitedHealth Group had an integrated human resources department with its various subsidiaries and segments.

11.     The timeliness and jurisdictional requirements of Title VII have been met.

12.     Warren was hired by UHG on September 9, 2013.

13.     In 2021, Warren was Chief Actuary of Optum Advisory Services and Group Leader for the Risk Management & Growth Advisory Group of Optum Advisory Services ("RMG"). In its 10-K, UHG reported that Optum is a business segment of UHG.

14.     Warren's responsibilities included full P&L leadership responsibility for five consulting practices that included over 270 employees.

15.     In 2021 under Warren's leadership, RMG achieved sales, revenues, and engagement margins that significantly exceeded budget goals and far exceeded those metrics for all prior years in RMG's history.

16.     Warren was able to achieve this outstanding success while working almost exclusively remotely.

17.     Warren reported to Senior Vice President Craig Savage.

18.     In a formal Leadership Talent Review meeting in September 2021, Savage stated that Warren was worthy of year-end promotion. Indeed, Savage stated that if his position were to become vacant, Warren should be his successor.

19.     On October 19, 2021, Warren sent an email regarding RMG's sales results through the end of the third quarter of 2021. He stated that his team had achieved phenomenal results. He noted that RMG was well ahead of its year-to-date TCV sales goals. "TCV" means "total contract value." It is a measure of sales used by Defendant to track the performance of Warren's group.

20.     On October 19, 2021, Savage sent an email in which he congratulated the RMG team for its outstanding performance under Warren's leadership.

21.     In August 2021, UHG announced that it was implementing a mandatory COVID-19 vaccination program. UHG informed its employees that they were required to obtain the COVID-19 vaccination on or before November 30, 2021 unless they qualified for a medical or religious exemption.

22.     On or about October 14, 2021, Warren applied for a religious exemption from UHG's vaccine mandate.

23.     Warren applied for the exemption through UHG's online system.

24.     Warren stated the following in his request for religious exemption:

Religious Exemption Request

4

I wish to receive a religious exemption from the mandatory requirement of receiving the Covid-19 vaccine. Based on the practice of my religion, which is an integral part of my life, I have a sincere and meaningful religious belief in God that occupies my life and upon which all else is subordinate. It would be a fundamental renunciation of my obedience to God to allow the Covid-19 vaccine to be injected into my body.

I wish to receive an accommodation, which I believe is a reasonable accommodation, to allow me to work remotely, as I have been doing during this year. In the occasion that I might need to attend an in-person meeting with colleagues, clients or potential clients, I'm willing to submit to reasonable testing and/or protective measures to ensure the safety of all concerned. That could take the form of wearing adequate face covering or providing evidence of positive antibodies for Covid-19, or a recent negative Covid-19 test result, obtained prior to such business trips or local office meetings.

The reason that I feel this request is reasonable, is that, through my own personal performance, I have shown that I was able to lead the Risk Management & Growth (RMG) Advisory Group's team performance in 2021, while working almost entirely remotely, which performance has vastly exceeded this Group's past performance in revenues, sales, engagement margin and internal operating income during all prior periods when in-person meetings with colleagues, clients and potential clients were commonplace.

Thank you for your consideration of my request for religious exemption and reasonable accommodation.

25.    On November 2, 2021, UHG rejected Warren's request for a religious exemption from its COVID-19 vaccine mandate.

26.    On November 2, 2021, UHG did not state any reason for rejecting Warren's request for a religious exemption from its COVID-19 vaccine mandate.

27.    UHG never at any time entered into the interactive process with Warren.

28.    On November 9, 2021, Warren sent to UHG the letter attached as Exhibit A.

29.     In his November 9, 2021, letter, Warren expanded on his request for a religious exemption and requested UHG to reconsider its denial.

30.     On November 12, 2021, UHG stated that it accepted as true the sincerity of Warren's religious beliefs and his explanation of why those beliefs prevented him from getting the COVID-19 vaccination.

31.     On November 12, 2021, UHG stated that there was no accommodation that it could offer Warren that would not impose an undue hardship on UHG.

32.     On December 1, 2021, Warren sent the letter attached as Exhibit B to UHG.

33.     Less than an hour later, UHG stated the following in response to Warren's December 1, 2021 letter: "In considering your request for a religious exemption, UHG fully complied with its obligations under Title VII and followed EEOC guidance. Though you may disagree with UHG's decision, the denial of your exemption request is final."

34.     The fact that UHG responded to Warren's December 1, 2021, letter in less than an hour demonstrates conclusively that UHG did not evaluate the letter in good faith or reasonably.

35.     On December 1, 2021, UHG placed Warren on two days' paid leave.

36.     On December 3, 2021 UHG placed Warren on thirty days' unpaid leave.

37.     On December 9, 2021, Warren filed a charge of discrimination with the EEOC against UHG in which he stated that UHG had discriminated against him in violation of Title VII.

38.     On December 23, 2021, Savage sent out an email in which he stated that even though the Payer Consulting team (of which Warren was a part) had gone fully remote, it has "crushed" its goals in 2021. This demonstrates beyond any doubt that Warren was able to lead his team to "crush" its performance goals while working almost exclusively remotely. Nevertheless, UHG refused to consider allowing Warren to work remotely as an accommodation to his sincerely held religious beliefs.

39.     On January 10, 2021, "UnitedHealth Group" with an address of 9800 Bren Road East, Minnetonka, Minnesota 55343 sent a letter to Warren (the "Termination Letter"). "UnitedHealth Group" is a registered trademark of Defendant. In the Termination Letter, Defendant stated: "This notice is to confirm the termination of your employment with UnitedHealth Group on January 7, 2022, effective January 8, 2022, for non-compliance with COVID-19 Vaccination Policy."

40.     Defendant fired Warren effective January 8, 2022.

41.     On January 18, 2022, Warren amended his EEOC charge of discrimination.

42.     On February 16, 2022, UHG's counsel stated regarding Warren:

In November 2021, [Warren] requested an accommodation from the vaccination policy based on his claimed religious objections to receiving the vaccine. [UHG] did not question the sincerity of his religious belief. Instead, [UHG] evaluated whether providing an accommodation to [Warren] would

impose an undue hardship under Title VII. Specifically, [UHG] considered whether there were any accommodations – including but not limited to masks, testing, and other personal protective equipment – that would have allowed [Warren] to continue working unvaccinated without imposing more than a *de minimis* hardship. After weighing the risks to employee and client safety, as well as continuity of business operations, [UHG] determined that these potential accommodations would impose more than a *de minimis* hardship on its business. Accordingly, [UHG] denied [Warren]'s request for a religious accommodation.

43.    In summary:

(a)  UHG never questioned the sincerity of Warren's asserted religious belief.

(b)  UHG never entered into the interactive process with Warren.

(c)  UHG terminated Warren based solely on its unilateral determination that providing any accommodation whatsoever to Warren would impose more than a *de minimis* hardship on its business.

44.    Therefore, the exclusive basis for UHG's termination of Warren's employment was its reliance on the "more than a *de minimis* cost" standard for evaluating whether an providing an accommodation would be an undue hardship.

45.    In *Groff v. DeJoy*, 600 U.S. 447 (2023), the United States Supreme Court stated: "[S]howing 'more than a *de minimis* cost,' as that phrase is used in common parlance, does not suffice to establish 'undue hardship.'"

46.    Accordingly, the sole basis on which UHG terminated Warren is not a lawful ground for termination under Title VII.

47.    After failing to accommodate Plaintiff's religious beliefs, UHG took the adverse employment of action of terminating his employment.

## V.  FIRST CLAIM FOR RELIEF

**(Violation of Title VII – Religious Discrimination Failure to Accommodate)**

48.     Plaintiff hereby realleges the above allegations as if fully set forth herein.

49.     Title VII prohibits Defendant from discriminating against its employees on the basis of their sincerely held religious beliefs.

50.     Plaintiff holds a sincere religious belief that precludes him from receiving a COVID-19 vaccine.

51.     Plaintiff informed Defendant of those beliefs and requested a religious exemption and reasonable accommodation from the vaccine mandate.

52.     Defendant failed to engage in the interactive process with Plaintiff regarding his religious accommodation request.

53.     Irrespective of the interactive process, Defendant failed to provide Plaintiff with a religious exemption and reasonable accommodation, thereby discriminating against Plaintiff because of his religious beliefs.

54.     Plaintiff's religious belief about receiving a COVID-19 vaccine was the basis for Defendant's discriminatory treatment.

55.     Defendant's failure to even consider accommodating Plaintiff's religious beliefs under any circumstances whatsoever harmed and will continue to harm Plaintiff.

56.     Accommodating Plaintiff's religious beliefs by providing the accommodations suggested in Exhibits A and B would not have resulted in an undue hardship on Defendant or its business.

57.     Plaintiff is entitled to all legal and equitable remedies available for Title VII violations, including compensatory damages.

## VI.  SECOND CLAIM FOR RELIEF
## (Violation of Title VII – Retaliation)

58.     Plaintiff hereby realleges the above allegations as if fully set forth herein.

59.     Plaintiff (1) engaged in protected opposition to discrimination; (2) suffered what a reasonable employee would have found to be a materially adverse action by his employer; and (3) a causal connection existed between the protected opposition and the materially adverse action.

60.     In particular, on or about December 9, 2021, Plaintiff filed a charge of discrimination against UHG. Filing a charge of discrimination with the EEOC is protected opposition to discrimination.

61.     After Plaintiff filed a charge of discrimination with the EEOC, Defendant terminated his employment. A reasonable employee would have found that termination of employment is a materially adverse action by his employer.

62.     Finally, there is a direct causal connection between Plaintiff's filing of his charge of discrimination and Defendant's materially adverse action as demonstrated by, inter alia, the fact that Defendant terminated Plaintiff's employment less than a month after he filed his charge of discrimination and the hostile reaction Plaintiff encountered when he made his request.

63.     Plaintiff is entitled to all legal and equitable remedies available for Title VII violations, including compensatory damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court:

A. Award Plaintiff backpay, front pay, and other compensatory damages suffered by Plaintiff, including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and nonpecuniary losses (or, in the alternative, reinstatement with backpay and other damages);

B. Award Plaintiff the reasonable costs and expenses of this action, including reasonable attorneys' fees as required by law;

C. Award prejudgment and post judgment interest, as provided for by law; and

D. Grant such other and further relief as the Court deems equitable and just under the circumstances.

## JURY DEMAND

Plaintiff requests trial by jury on all claims.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge Colorado 80033
Voice: (303) 205-7870; Fax: (303) 463-0410
Email: barry@arringtonpc.com

Shaun Pearman
The Pearman Law Firm, P.C.
4195 Wadsworth Boulevard
Wheat Ridge Colorado 80033
Phone Number: (303) 991-7600
Fax Number: (303) 991-7601
E-mail: shaun@pearmanlawfirm.com

11

*Attorneys for Plaintiff*